# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

UNITED STATES OF AMERICA

v.

MOHAMMAD "MOE" DIAB,
RANI EL-SAADI,

                 Defendants.

</td><td>

No. 19-cr-374 (RDM)

</td></tr>
</table>

## JOINT STATUS REPORT

The United States of America and defendants Mohammad Diab and Rani El-Saadi respectfully submit this joint status report stating their respective positions on the outstanding issues discussed during the November 12, 2021, telephone conference with the Court.

## I.   THE GOVERNMENT'S POSITION

Based on representations made to the Court on Friday, November 12, 2021, the government understands that defendant Diab will move the Court to sever his case from that of Defendant's El-Saadi and request a continuance of trial. Defendant El-Saadi appears to agree with Mr. Diab's request for severance and would like to move forward with the scheduled trial date of December 6, 2021. For the reasons that follow, the government opposes severance but would not oppose a brief continuance of trial to resolve outstanding items.

### A.   Severance Is Not Warranted

Less than three weeks from trial, the defendants again are seeking severance, a request that this Court previously denied. ECF No. 128 at 30-31. As this Court found, "El-Saadi's alleged participation in the second conspiracy is similar to the alleged roles of several other defendants."

*Id*. at 30.  Like his co-defendant Diab, "El-Saadi is accused of taking money from Khawaja and then contributing that money to a political committee in connection with the 2016 election."  *Id*. The evidence of conduit contributions at trial, therefore, "will likely be of similar nature and quality, including copies of reports detailing the transactions."  *Id*.  As this Court held, the similarity of conduct and overlapping nature of the evidence support a single trial for co-conspirators Diab and El-Saadi.  Moreover, to prevail on a motion to sever, defendant El-Saadi bears the "heavy burden" of proving prejudice.  *United States v. Edelin*, 118 F. Supp. 2d 36, 41 (D.D.C. 2000).  Prejudice, in this context, means a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).  Nothing has changed in this respect since the Court denied defendant El-Saadi's motion to sever in July 2021, and the government is unaware of any specific trial right that would be undermined by trying both defendants at the same time.[1]  Severance, therefore, is unwarranted.

## B.  Outstanding Issues Outside the Control of the Prosecution Team Weigh in Favor of a Continuance

There are several outstanding issues outside of the prosecution team's control that need to be resolved before trial.  Therefore, the government is not opposed to defendant Diab's request for a continuance, as it will allow time to resolve the remaining issues, including (1) pending discovery from the District of Massachusetts, (2) an ongoing privilege review, and (3) a conflict of interest by defendant El-Saadi's counsel who also represent his brother, Wael El-Saadi.

---

[1]     The government has not reviewed defendants' position statement in advance.  To the extent that either defendant articulates any newly identified facts or circumstances regarding their "heavy burden" to prove prejudice, the government requests an opportunity to respond thereto at oral argument or in a subsequent filing.

**1.      District of Massachusetts Discovery**

As discussed during the November 12, 2021, teleconference with the Court, the government intends to produce, out of an abundance of caution, discovery from a separate criminal matter being handled by a separate prosecution team in the District of Massachusetts in Case No. 1:21-cr-10250 (D. Mass.).  That case was charged via indictment nearly two years after this matter was indicted.  That separate criminal matter involves allegations of wire fraud and bank fraud relating to Allied Wallet, Inc., defendants Ahmad Khawaja and Mohammad Diab, and others.  *See* Indictment, ECF No. 1, No. 1:21-cr-10250 (D. Mass. Aug. 25, 2021).  The government requested a copy of the District of Massachusetts discovery shortly after indictment in that case for the purpose of disclosing it to the defendants in this case out of an abundance of caution.  The government has not received this discovery as of this filing.

Further complicating matters, the prosecution team in this case was notified last night that attorneys for Andy Khawaja sent a letter to the prosecution team in the District of Massachusetts. In it, attorneys for Khawaja raised a claim of privilege over documents related to that investigation, including communications between Rudy Dekermenjian, a co-conspirator and potential witness, and Khawaja.  Although the prosecution team in the District of Massachusetts does not believe that any materials in the intended discovery is privileged, the prosecution team in that case would like an opportunity to assess Khawaja's claim of privilege before distributing those documents to any third parties, including the defendants in this case.  Accordingly, the prosecution team in the District of Massachusetts will not produce to the prosecution team in this case any records implicated by Khawaja's claim of privilege until that matter is resolved, including email records from the accounts of Khawaja and defendant Diab seized pursuant to search warrants issued in the District of Massachusetts.  They will nonetheless produce the remainder of their discovery file as soon as it becomes available for transfer.

## 2.     Privilege Review

The government's filter team in this case received on or about November 2, 2021, approximately 13,500 items from the Allied Wallet email account of Rudy Dekermenjian.[2]  The filter team has been reviewing these items to determine whether any are privileged, including by making privilege determinations based on the Court's prior rulings on the filter side regarding the types of Dekermenjian's communications that are privileged.  In light of the letter from Khawaja's counsel referenced above, the filter team may also have to consult with Khawaja's counsel after it has completed its work in order to determine whether Khawaja is asserting privilege over any communications Dekermenjian had that cannot clearly be determined to be privileged or not privileged.  The filter team may have to consult with the Court if any disagreements arise as a result of that process.  Therefore, a continuance will provide time for the filter team, Khawaja's counsel, and the Court to resolve the remaining privilege issues, complete any necessary review, and transfer non-privileged materials to the prosecution team, who will then share those materials with defense counsel in this case.

## 3.     Defendant El-Saadi's Counsel Also Represents a Potential Witness, a Conflict that Has Not Been Resolved

At trial, the government plans to call as a witness Wael El-Saadi, the brother of Rani El-Saadi.  Rani El-Saadi's counsel, Justin Shur and Megan Cunniff Church, currently also represent Wael-El-Saadi, creating a conflict of interest.  The government inquired of defense counsel the status of Wael El-Saadi's representation on October 29, 2021.  Mr. Shur indicated on November

---

[2]     The government understood originally that this account would be approximately 6,000 emails.  When received and uploaded to Relativity, an electronic document reviewing platform, it totaled 13,500 total items, likely as a result of attachments to emails (which must also be reviewed for privilege).

6, 2021, that Wael El-Saadi was in the process of retaining separate counsel, but on November 15, 2021, Mr. Shur informed the government that his firm still represents Wael El-Saadi.  Mr. Shur again stated that Wael El-Saadi is still in the process of retaining separate counsel.   A conflict of interest, therefore, currently exists, and will need to be resolved in advance of trial so that, at a minimum, defendant El-Saadi may secure unconflicted counsel for the purpose of cross-examining Wael El-Saadi at trial.

## II.   MR. EL-SAADI'S POSITION

Mr. El-Saadi's position is simple:  He wants to clear his name at trial beginning December 6, 2021.  To make that happen, Mr. El-Saadi is willing to forgo moving to preclude the government from calling Rudy Dekermenjian as a witness at trial.  If the Court grants Mr. Diab's request for a continuance, Mr. El-Saadi asks that his case be severed so that he may proceed to trial as scheduled. Mr. El-Saadi is also willing to withdraw his pending Motion for *Brady* Material, Dkt. 145, if trial remains set to begin on December 6.

### A.   The Government's Negligence Has Prejudiced Mr. El-Saadi

This case has gone on for too long.  The government has had two years to fulfill its constitutional obligation to give Mr. El-Saadi a speedy trial.   With the government's vast investigative powers, that should not have been hard.  Mr. El-Saadi is charged with just two offenses; motions practice has been limited; trial has been set for December 6, 2021, for *eleven* months, Dkt. 104; the Court has promptly resolved every dispute that has arisen; and the government's apparent star witness—Mr. Dekermenjian—has been cooperating for at least *sixteen* months, Dkt. 78 (Dekermenjian Plea Agreement dated Aug. 6, 2020).  At no point in the last two years has the government ever warned Mr. El-Saadi or the Court that it was not prepared for a December 6 trial.

But now the government seems intent on stringing out this case by drowning defendants in documents just weeks before trial.  It told defense counsel for the first time on November 3 that it would produce four **terabytes** of new discovery material related to parallel investigations involving Ahmad "Andy" Khawaja, Mr. Diab, and Mr. Dekermenjian.  *See* Dkt. 145 at 1.  Though the government claims to have not reviewed the material yet, it represented to the Court that the investigations have nothing to do with Mr. El-Saadi or the allegations in this case.  *See* Nov. 12, 2021, Min. Entry.  Nevertheless, the government seeks to leverage this trove of unrelated documents to force Mr. El-Saadi to yet again delay the chance to clear his name at trial.

This situation is wholly of the government's making.  It dragged its feet in trying to obtain the materials related to those unrelated investigations.  As the government points out, Mr. Dekermenjian pleaded "guilty before this Court . . . for conduct relating to [one of the investigations]" more than a year ago.  Dkt. 146 at 3 n.3; *see* Plea Agreement, *United States v. Dekermenjian*, No. 20-cr-174-RDM (D.D.C.) (filed Sept. 9, 2020).  The other investigation resulted in a publicly filed enforcement action over two years ago.  *See* Dkt. 146 at 4 (referencing *FTC v. Allied Wallet, Inc.*, No. 2:19-cv-4355 (C.D. Cal.)).  Nearly all that time, the government knew that it had until September 7, 2021, to "produce discoverable materials related to trial witnesses" ahead of the December 6 trial date.[3]  Dkt. 104 ¶ 3.  But rather than obtain those materials before the Court-ordered deadline—or even alerting the Court or Mr. El-Saadi that this mountain of material existed—the government apparently sat on its hands for at least eleven months.  *See United States v. Demirtas*, 204 F. Supp. 3d 158, 171 (D.D.C. 2016) (Moss, J.) ("[T]he burden is

---

[3] Consistent with this practice, the government failed to provide defendants with its witness list by November 15 despite the parties' agreement to do so.  Only after counsel for Mr. El-Saadi reminded the government of its obligation did the government (four hours later) provide its one-page witness list to Mr. El-Saadi.

on the government to explain the cause of the pre-trial delay." (quotation omitted)).  The wheels of justice might turn slowly, but they don't just stop turning entirely and without explanation for months on end—at least not without consequences.

So far, the consequences of the government's dilatory tactics have unfairly fallen entirely on Mr. El-Saadi.  Every day that these unfounded charges linger over Mr. El-Saadi's head inflicts a multitude of harms.  The "delay between formal accusation and trial" has caused Mr. El-Saadi great "anxiety and concern."  *Doggett v. United States*, 505 U.S. 647, 654 (1992).  Before the government's accusations, Mr. El-Saadi enjoyed a hard-won reputation for honesty, diligence, and professionalism.  That reputation was and is critical to his livelihood—providing luxury travel services to government officials, the ultra-wealthy, and other VIPs.  These clients refuse to do business with anyone they even suspect they might not be able to trust.  Well before the COVID-19 pandemic arrived, the government's allegations predictably destroyed Mr. El-Saadi's reputation and his business.  Mr. El-Saadi's largest clients, particularly government officials, will not deal with him while he remains accused of a crime by the U.S. government.

The need to clear his name ***now*** is more important than ever.  COVID threw the luxury travel industry into a state of disrepair.  The window to rebuild has finally opened in the past few months.  The premier industry trade shows have returned, clients are looking for new providers of luxury travel services, and foreign governments have new personnel in need of travel services.  That window will not stay open long, though.  Once clients form new relationships with travel services providers, they are reluctant to give that business to anyone else—let alone to someone charged with a federal crime.  Even if clients were open to working with Mr. El-Saadi with charges pending, he cannot travel abroad to provide the face-to-face service that VIP travelers demand.  Nearly all Mr. El-Saadi's clients live abroad, and to serve those clients, Mr. El-Saadi must travel

extensively—particularly to Lebanon, Qatar, Kuwait, Turkey, the United Arab Emirates, Saudi Arabia, and the United Kingdom.[4]

Apart from the reputational harm and travel restrictions, the government's allegations have crippled Mr. El-Saadi's ability to serve his few remaining clients. Mr. El-Saadi often covers the expenses of travel arrangements up front and is only later repaid by his clients. As a result, Mr. El-Saadi must put huge charges (often exceeding $100,000) on his credit cards. But once the government charged him in this case, Mr. El-Saadi's banks shut his accounts and canceled his credit cards. And with the government's allegations following him, Mr. El-Saadi is unable to open new accounts or open new lines of credit. Simply put, the government's allegations have destroyed Mr. El-Saadi's name and his business. He will continue to suffer these harms until he can clear his name at trial.

### B. Mr. El-Saadi Does Not Intend To File a Motion To Preclude the Government from Calling Mr. Dekermenjian at Trial

The Court ordered the government to obtain and produce all "discoverable materials related to trial witnesses" by September 7. Dkt. 104 ¶ 3. The government knew about that deadline for nine months. It also knew that failing to comply with its discovery obligations "could result in . . . exclusion of government evidence or witnesses." Dec. 7, 2020, Min. Entry. Nevertheless, the government missed its discovery deadline by almost two months before it announced its intent to produce discovery material related to Mr. Dekermenjian. Without question, the government could have and should have obtained that material earlier given its knowledge of Mr. Dekermenjian's involvement as early as September 2020. Nor has the government offered ***any*** explanation for the

---

[4] The inability to travel internationally affects more than Mr. El-Saadi's business. Several of Mr. El-Saadi's family members (including his sister) live abroad, meaning Mr. El-Saadi has been unable to visit them.

many months separating its knowledge of the investigations (and the Court's discovery deadline) and its sudden need to produce millions of pages of materials just weeks before trial. *See generally* Dkt. 146. The government's "lethargy" in obtaining and notifying defendants about discoverable material amounts to negligence. *Doggett*, 505 U.S. at 654.

Despite the government's negligence, Mr. El-Saadi will not move to preclude the government from calling Mr. Dekermenjian as a trial witness. Though that relief is within the Court's discretion, *see United States v. Day*, 524 F.3d 1361, 1369 (D.C. Cir. 2008), Mr. El-Saadi believes it is in his best interest to proceed to trial as soon as possible rather than pursue relief for the government's discovery violations. For that reason, Mr. El-Saadi appreciates but declines the Court's invitation to file a formal motion to preclude the government from calling Mr. Dekermenjian.

### C.  If the Court Were To Grant Mr. Diab's Request for a Continuance, Mr. El-Saadi Believes His Case Should Be Severed So that His Trial Can Proceed as Scheduled

At the November 12 status conference, Mr. Diab's counsel represented that Mr. Diab would seek a continuance to review the discovery materials the government intends to produce. Mr. El-Saadi opposes any continuance and demands a trial consistent with his constitutional and statutory rights to a speedy trial.

If the Court intends to grant Mr. Diab a continuance, however, Mr. El-Saadi requests that his case be severed and proceed to trial as scheduled on December 6. Long before the current dispute arose, Mr. El-Saadi moved to sever his case. *See* Dkt. 83. Back then, Mr. El-Saadi argued that the disparity in charges and evidence against his co-defendants warranted severance. Dkt. 83 at 9-14. Mr. El-Saadi also specifically noted the extreme unfair prejudice any mention of the alleged conspiracy involving foreign interference in the 2016 presidential election would inflict on him. Dkt. 83 at 13. Though the Court did not agree that those considerations warranted severance

at the time, it noted its "continuing duty at all stages of the trial to grant a severance if prejudice does appear." Dkt. 128 at 30 (quotation omitted).

There is now no doubt that Mr. El-Saadi is prejudiced by continued joinder. Mr. El-Saadi has a constitutional and statutory right to a speedy trial. *See Demirtas*, 204 F. Supp. 3d at 170. A delay between accusation and trial exceeding one year is "presumptively prejudicial." *Id.* at 193 (quotation omitted). That prejudice is all the greater where, as here, the delay results from the government's negligence. *See Doggett*, 505 U.S. at 653. Faced with similar circumstances, courts have even reversed convictions where the district court failed to sever to vindicate one defendant's right to a speedy trial. *E.g.*, *United States v. Messer*, 197 F.3d 330, 340 (9th Cir. 1999).

In fact, severance is even more appropriate here where there are few if any efficiency gains to be had by continued joinder. At this point, there will be two trials no matter what. The government will eventually have to try Mr. Khawaja, who remains out of the country. Given that the government's belated production of millions of pages of materials relate to both Mr. Khawaja and Mr. Diab, judicial economy counsels trying Mr. El-Saadi now and continuing the trial against those defendants until Mr. Diab can review the new discovery material and the government can extradite Mr. Khawaja. Simply put, continued joinder is all risk and no reward.

**D.     If His Trial Remains Set for December 6, Mr. El-Saadi Will Withdraw His *Brady* Motion To Avoid Further Delay—Particularly Given the Government's Update on the Status of the District of Massachusetts Discovery Material**

To accommodate a speedy resolution of the allegations against him, Mr. El-Saadi will withdraw his Motion for *Brady* Material (Dkt. 145) if trial proceeds on December 6 as scheduled. Given the government's representation that it still has not received the four terabytes of material, it is not feasible for the government to even identify *Brady* material in that production in time for trial on December 6. For Mr. El-Saadi, given the personal and professional consequences of this

10

ongoing prosecution, the choice between a speedy trial and pursuing the *Brady* motion is an easy one.

### III.    MR. DIAB'S POSITION

Mr. Diab believes this entire crisis was precipitated by the government's negligence to coordinate the prosecutions of Mr. Diab, Mr. Khawaja, and Mr. Dekermenjian occurring in two districts by the same Justice Department.

Mr. Diab's defense will be based on the advice and participation of California attorney Dekermenjian and the conduct and modus operandi of his cousin, Mr. Khawaja. Mr. Diab's defense will be based on his business relationship with Mr. Khawaja, which is interrelated with the evidence in the Boston case.

Mr. Diab agrees with the government that Mr. El-Saadi's case is separate from the Boston case and can be separated if Mr. Diab's case is continued.

Because Mr. Diab's defense case includes the involvement of attorney Dekermenjian, Mr. Diab's lawyer cannot render competent legal service to Mr. Diab unless he has completely reviewed the Boston discovery, which will probably not be available until early next year. Based on the representation of the volume of discovery, another several months' delay may be necessary. The Boston case involves three of the same defendants as the DC case.

Mr. Diab does not believe that Mr. El-Saadi's defense or case will have any relationship with his case. Therefore, Mr. Diab will suffer no harm if Mr. El-Saadi's case is severed.

Unlike Mr. El-Saadi, Mr. Diab has suffered no harm because of the Court's travel restrictions.

Mr. Diab believes a continuance to at least March of 2022 is in the interest of justice.

Dated: November 16, 2021                    Respectfully submitted,


/s/ *Victor R. Salgado*                     /s/ *Megan Cunniff Church*
Victor R. Salgado                           Justin V. Shur
DC Bar #975013                              DC Bar #973855
Michelle K. Parikh                          Kenneth E. Notter III
DC Bar #1044532                             DC Bar #1708367
Jolee Porter                                MOLOLAMKEN LLP
NY Bar #4909362                             600 New Hampshire Avenue, N.W.
Public Integrity Section                    Washington, D.C.  20037
Criminal Division                           Telephone: (202) 556-2000
U.S. Department of Justice                  Facsimile:  (202) 556-2001


                                            Megan Cunniff Church
                                            Admitted *pro hac vice*
/s/ *Harland W. Braun*                      IL Bar #6281234
Harland W. Braun                            MOLOLAMKEN LLP
Braun & Braun, LLP                          300 N. LaSalle Street
0880 Wilshire Boulevard                     Suite 5350
Suite 1020                                  Chicago, IL  60654
Los Angeles, CA  90024                      Telephone: (312) 450-6700
Telephone: (310) 277-4777                   Facsimile:  (312) 450-6701

*Attorney for Mohammad Diab*                *Attorneys for Rani El-Saadi*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.


Dated:  November 16, 2021                              */s/ Victor R. Salgado*
                                                                    Victor R. Salgado
                                                                    Public Integrity Section
                                                                    Criminal Division
                                                                    U.S. Department of Justice